UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO.:

MARY DELK,

    Plaintiff,

v.

STORM TIGHT WINDOWS, INC.,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, **MARY DELK**, by and through her undersigned counsel, brings this action against Defendant, **STORM TIGHT WINDOWS, INC.**, and in support of his claims states as follows:

1. This is an action for damages, injunctive relief, and declaratory relief against Defendant for violations of 42 U.S.C. § 1981 ("Section 1981").

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

3. Pursuant to 28 U.S. Code § 1391, venue is proper in the Southern District of Florida, Ft. Lauderdale Division, because all of the events giving rise to these claims occurred in Broward County, Florida.

## THE PARTIES

4. Plaintiff worked as an employee of Defendant at Defendant's Broward County, Florida facility.

5. Defendant operated a facility in Broward County, Florida, during all times relevant to this Complaint.

## GENERAL ALLEGATIONS

6. Plaintiff has satisfied all conditions precedent, or they have been waived.

7. Plaintiff has hired the undersigned attorneys and agreed to pay them a fee.

8. Plaintiff requests a jury trial for all issues so triable.

9. Plaintiff is a member of a protected class of persons under Section 1981.

10. Plaintiff is an employee whose rights to contract for employment, and enjoy the benefits of employment, are protected under Section 1981.

11. Under Section 1981, Defendant is an employer prohibited from interfering with any employee's contractual right to enjoy the same benefits, privileges, terms, and conditions of employment that all other employees of Defendant otherwise enjoy, regardless of the employee's race and/or color.

12. At all times material hereto, Defendant acted with malice and reckless disregard for Plaintiff's protected rights under Section 1981.

## FACTS

13. On or about May 15, 2019, Plaintiff began working for Defendant.

14. Plaintiff is an African American person.

15. During Plaintiff's tenure with Defendant, Plaintiff satisfactorily performed all the essential duties of her positions.

16. During Plaintiff's employment with Defendant, Plaintiff was unlawfully subjected to race discrimination based on disparate treatment, unlawfully subjected to a severe and pervasive hostile and harassing work environment based on her race, and unlawfully subjected to

different terms and condition of employment, by Defendant solely because of her race, including without limitation, as described below.

17. Immediately upon Plaintiff starting work for Defendant, Plaintiff was subjected to an unlawfully severe and pervasive hostile and harassing work environment based on her race and unlawfully discriminated against based on her race, including without limitation, Defendant's general manager, Chris Campbell, a Caucasian, treating Plaintiff in a demeaning and disrespectful manner compared to other non-African American employees, including Andressa Santos, an Hispanic person.

18. Based on Mr. Campbell's unlawful conduct against Plaintiff, on or about June 21, 2019, Plaintiff complained and objected to Defendant's human resource director, Bobby Brewster, a Caucasian person, that Plaintiff was being treated in an unlawfully hostile, harassing and discriminatory manner by Mr. Campbell based on her race.

19. Not only did Defendant fail to take any corrective or remedial actions after Plaintiff's complaint and objection to Mr. Brewster, the unlawfully hostile and harassing work environment became worse for Plaintiff and Defendant started to unlawfully retaliate against Plaintiff based on her complaint and objection.

20. Shortly after Plaintiff's initial complaint and objection to Mr. Brewster, Plaintiff was called into Mr. Brewster's office based on a meritless complaint by Ms. Santos and Mr. Campbell threatened to fire Plaintiff because of the meritless complaint.

21. On or about June 26, 2019, Plaintiff was again called into Mr. Brewster's office based on another meritless complaint by Ms. Santos and Mr. Campbell threatened to fire Plaintiff a second time because of the meritless complaint.

22. On or about July 12, 2019, Defendant's marketing director, Keith Gutterman, a Caucasian person, started to make weird and disturbing faces and growling at Plaintiff while saying under his breath that he was sick of Plaintiff. Please note that Mr. Gutterman did not treat any of the other non-African American employees in this manner.

23. Following the incident with Mr. Gutterman, on or around July 13, 2019, Plaintiff again complained to Mr. Brewster about the unlawful racially hostile and harassing work environment, Mr. Gutterman's conduct toward her, and the unlawful retaliation against her based on her prior complaint and objection. Again, Defendant took no corrective or remedial actions to stop the unlawful conduct and retaliation against Plaintiff.

24. Then, as just another example of how open and notorious the racially hostile environment was toward African American employees, on or about August 1, 2019, while Plaintiff was in Mr. Brewster's office, the owner of Defendant, Lee Brown, a Caucasian person, stated on speakerphone to Mr. Brewster (for which Plaintiff was able to hear on the speakerphone) that it was Mr. Brown's "f$@king company" and that Mr. Brewster should hire 70% whites and only 30% blacks, keep the majority of the blacks out of the call center, and then fire the black employees later on. Please note that this was Mr. Brown openly instructing Mr. Brewster to unlawfully limit African American hires, unlawfully limit positions for African Americans, and unlawfully terminate African American employees when Mr. Brewster knew I was listening to Mr. Brown make these statements.

25. Again, the hostile and harassing work environment and retaliation against Plaintiff continued, even to the point of becoming threatening to Plaintiff.

26. On or about August 7, 2019, another Caucasian employee, Tim Cooprider, started behaving in a very disrespectful and threatening manner to Plaintiff, including walking by

Plaintiff's office for no reason, slamming doors around Plaintiff, and speaking to Plaintiff in a hostile manner.

27. Plaintiff reported Mr. Cooprider's behavior to both Mr. Brewster and Mr. Campbell; however, no corrective or remedial action was taken by Defendant and Plaintiff was subjected to further unlawful retaliation.

28. Based on the continued hostile and harassing work environment by Mr. Campbell against Plaintiff based on her race, on or about August 23, 2019, Plaintiff complained and objected to both Mr. Brewster and Mr. Brown regarding Mr. Campbell's continued unlawful conduct and retaliation against her.

29. Again, instead of Defendant taking any corrective or remedial actions, Mr. Campbell became increasingly hostile and harassing toward Plaintiff in retaliation for Plaintiff's complaints and objections to his unlawful conduct against her.

30. Next, on or about September 6, 2019, another Caucasian employee, Robert, started to verbally attack Plaintiff, in front of Defendant's installers, with vulgar language yelling at her "this is what the f$@k I have to put up with" and calling her a "dumb bitch" and throwing his cooler on the floor in a threatening and aggressive manner.

31. In response to Robert's vulgar statements and threatening and aggressive behavior toward Plaintiff, Plaintiff simply responded to him that Robert did not know "who the f$@k" she was and that she didn't appreciate being spoken to or treated in such a manner.

32. Plaintiff immediately reported Robert's actions to Mr. Brown and Mr. Brewster and the next day to Mr. Campbell; however, no disciplinary action was taken against Robert.

33. As the culmination to the unlawful discrimination and retaliation against Plaintiff by Defendant, on September 20, 2019, Defendant terminated Plaintiff's employment.

34. Defendant's reason for Plaintiff's termination was merely pretext for Defendant's unlawful conduct and retaliation against her.

35. Specifically, Defendant claimed that Plaintiff was being terminated for being hostile and using vulgar language which is clearly pretext for Defendant's unlawful conduct, further retaliation against Plaintiff for her complaints and objections to the Defendant's unlawful conduct, and further discrimination against Plaintiff based on her race as show by the disparate treatment toward Plaintiff compared to the other non-African American employees listed below.

36. Robert, a Caucasian, who used vulgar language toward Plaintiff and threw the cooler to the floor in a threatening and aggressive manner was not terminated.

37. Vered Weinstock, a Caucasian, openly stated that Mr. Cooprider was "rude as fuck" to another employee and she was never terminated.

38. Even the owner, Mr. Brown, a Caucasian male, used vulgar and hostile language when Mr. Brown told Mr. Brewster that it was his "f$@king company" when instructing Mr. Brewster to unlawfully limit African American hires, unlawfully limit positions for African Americans, and unlawfully terminate African American employees.

39. Mr. Cooprider, a Caucasian, was hostile, disrespectful, aggressive, and threatening toward Plaintiff and was not terminated.

40. On or about August 15, 2019, Don Dalghren, a Caucasian field supervisor, used vulgar language openly toward another employee, Brandon, stating to Brandon to "shut the f$@k

6

up" and that Brandon "did not know shit" for which Plaintiff reported to Mr. Brewster who broke up the argument; however, Mr. Dalghren was not terminated.

41. On or about September 9, 2019, Mr. Brewster, a Caucasian, used vulgar language to Mr. Campbell by stating to Mr. Campbell that Mr. Campbell "needed to stay off his ass" because Mr. Campbell was "dead ass wrong" for accusing Mr. Brewster of being under the influence of drugs while at work; however, Mr. Brewster was not terminated.

42. Furthermore, Plaintiff never even received any sort of written progressive discipline; but instead, Plaintiff was summarily terminated without any progressive discipline.

## COUNT I – 42 U.S.C. § 1981 VIOLATION
## (RACE DISCRIMINATION)

43. Plaintiff realleges and readopts the allegations of Paragraphs 1 through 42 of this Complaint, as though fully set forth herein.

44. Plaintiff is a member of a protected class of persons under Section 1981.

45. Plaintiff was subjected to disparate treatment, a hostile and harassing work environment, and subjected to different terms and conditions of her employment by Defendant, based solely on Plaintiff's race.

46. The foregoing actions constitute unlawful discrimination, in violation of Section 1981.

47. Defendant's actions were willful and done with malice.

48. As a direct and proximate result of Defendant's willful and reckless discrimination against Plaintiff, Plaintiff has suffered and will continue to experience pain and suffering, mental anguish, emotional distress, and loss of earnings and other employment benefits and job opportunities.

49. Plaintiff was injured due to Defendant's violations of Section 1981, for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff demands:

(a) A jury trial on all issues so triable;

(b) That process issue and that this Court take jurisdiction over the case;

(c) Judgment against Defendant, permanently enjoining Defendant from future violations of Section 1981, and remedying all lost income, raises, promotions, and other benefits of which Plaintiff was unlawfully deprived;

(d) Compensatory damages, including emotional distress, allowable at law;

(e) Punitive damages;

(f) Reinstatement of Plaintiff to a position comparable to her prior position, or in the alternative, front pay;

(g) Prejudgment interest on all monetary recovery obtained;

(h) All costs and attorney's fees incurred in prosecuting these claims; and

(i) For such further relief as this Court deems just and equitable.

### COUNT II — 42 U.S.C. § 1981 VIOLATION
### (RETALIATION)

50. Plaintiff realleges and readopts the allegations of Paragraphs 1 through 42 of this Complaint, as though fully set forth herein.

51. Plaintiff is a member of a protected class of persons under Section 1981.

52. By complaining about Defendant's unlawful discrimination against Plaintiff based on her race, Plaintiff engaged in protected activity under Section 1981.

8

53. Defendant retaliated against Plaintiff for engaging in protected activity under Section 1981 by terminating her employment.

54. Defendant's actions were willful and done with malice.

55. Defendant's retaliation was based solely on Plaintiff's exercise of her right to resist and oppose disparate treatment, which is protected under Section 1981.

56. As a direct and proximate result of Defendant's willful and reckless discrimination against Plaintiff, Plaintiff has suffered and will continue to experience pain and suffering, mental anguish, emotional distress, and loss of earnings and other employment benefits and job opportunities.

57. Plaintiff was injured due to Defendant's violations of Section 1981, for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff demands:

(a) A jury trial on all issues so triable;

(b) That process issue and that this Court take jurisdiction over the case;

(c) Judgment against Defendant, permanently enjoining Defendant from future violations of Section 1981, and remedying all lost income, raises, promotions, and other benefits of which Plaintiff was unlawfully deprived;

(d) Compensatory damages, including emotional distress, allowable at law;

(e) Punitive damages;

(f) Reinstatement of Plaintiff to a position comparable to her prior position, or in the alternative, front pay;

(g) Prejudgment interest on all monetary recovery obtained;

(h) All costs and attorney's fees incurred in prosecuting these claims; and

    (i)  For such further relief as this Court deems just and equitable.

<b><u>JURY TRIAL DEMAND</u></b>

Plaintiff herein demands a jury trial on and for all issues so triable.

Dated this 11th day of February, 2020.

            Respectfully submitted,

            */s/ Luis A. Cabassa*

            **LUIS A. CABASSA, P.A.**
            Florida Bar Number: 0053643
            **WENZEL FENTON CABASSA, P.A.**
            1110 North Florida Ave., Suite 300
            Tampa, Florida 33602
            Direct: 813-337-7992
            Main: 813-224-0431
            Facsimile: 813-229-8712
            Email: lcabassa@wfclaw.com
            Email: gnichols@wfclaw.com
            **Attorney for Plaintiff**

            **and**

            **SCOTT M. WEAVER**
            Florida Bar Number: 573221
            **THE WEAVER LAW FIRM, P.A.**
            801 West Bay Dr., Suite 426
            Largo, Florida 33770
            Direct No. 727-316-5330
            Facsimile: 727-499-7322
            E-mail: scott@theweaverlawfirm.com
            **Attorney for Plaintiff**